**In the Matter of R.P.**

No. 04–00–00221–CV.

Court of Appeals of Texas, San Antonio.

Dec. 6, 2000.

Rehearing Overruled Jan. 23, 2001.

Joel Richardson, San Antonio, for Appellant.

Michael P. Miklas III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

A jury found that R.P. had engaged in delinquent conduct by committing the offense of possession of marijuana. The trial court determined that R.P. was in need of rehabilitation and that protection of the public and of R.P. required that a disposition be made; therefore, the trial court placed R.P. on probation for a period of twenty-three months. The trial court ordered that R.P. remain in the custody of his parents.

R.P. asserts four points of error in this appeal, contending: (1) the evidence is legally and factually insufficient to support the jury's verdict that he engaged in delinquent conduct; (2) the trial court erred by questioning and engaging in dialogue with R.P. during the disposition hearing; (3) the trial court abused its discretion in placing R.P. on probation for twenty-three months until his 18th birthday; and (4) the trial court abused its discretion and de-

prived R.P. of his constitutional rights by ordering him not to attempt to earn a GED while on probation. We overrule each of R.P.'s points of error and affirm the trial court's judgment.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, R.P. challenges the legal and factual sufficiency of the evidence. In reviewing R.P.'s legal sufficiency challenge, this court reviews the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *In re A.C.*, 949 S.W.2d 388, 389 (Tex.App.—San Antonio 1997, no writ). With respect to R.P.'s factual insufficiency challenge, we consider all of the evidence while being "appropriately deferential" to the judgment of the trier of fact, and we will set aside the verdict only if the evidence is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.*

A police officer for the San Antonio Independent School District ("SAISD"), Stanley Slate, testified that he observed a group of four students behind the gym at Edison High School during the lunch hour. Because students are not permitted in that area at that hour, Slate stopped to watch the students. Slate began to observe the students through his binoculars because he believed they were engaged in some illicit activity. After two of the students left, Slate observed the other two students passing a pipe back and forth and taking puffs on the pipe. He called another SAISD officer, Daryl Harvey, for back-up and began approaching the students. Slate observed the male student, who was later identified as R.P., put the pipe in the other student's backpack.

Harvey stopped the students and Slate arrived shortly after. Slate searched the female student's backpack and discovered a pipe that was still warm and that contained a usable amount of marijuana in the bowl. Harvey searched R.P.'s backpack and discovered screens that were commonly used in smoking a pipe. Harvey stated that R.P. smelled of marijuana, so he smelled R.P.'s fingers, which also smelled of marijuana. The female student was later searched by a school nurse, and a bag of marijuana was discovered in her bra.

On cross-examination, R.P.'s counsel questioned Slate regarding his memory, his ability to physically see what he testified had occurred, and the details of his account. R.P.'s counsel also cross-examined Slate regarding perceived inconsistencies between his testimony and his report.

The jury was left to determine the credibility of the witnesses based on the challenges made to the testimony during cross-examination. *See In re H.G.*, 993 S.W.2d 211, 213 (Tex.App.—San Antonio 1999, no pet.) (trier of fact is exclusive judge of the credibility of the witnesses and resolves any inconsistencies in the testimony of any witness). The jury elected to believe the officers. The officers' testimony is legally and factually sufficient to support the jury's verdict. R.P.'s first point of error is overruled.

## TRIAL COURT QUESTIONING

In his second point of error, R.P. complains that the trial court erred by questioning and engaging in dialogue with R.P. during the disposition hearing. Specifically, R.P. complains about the following exchange that occurred after the trial court ascertained that an agreement had been reached between R.P. and the State with respect to his disposition:

THE COURT: I'll go along with the disposition of the parties, enter it as the judgment of the Court in this cause.

(To the Respondent) You don't want to see me again, son. Because if your father can't fix this with you, then you need to deal with me. Okay? You understand what's going on here?

THE RESPONDENT [R.P.]: I didn't do nothing wrong, so I don't know why I'm here in the first place

THE COURT: Okay. Then I take back the agreed disposition on this case.

He has an attitude, and I want to hear this case in total. And we'll do that tomorrow at 8:30 in the morning ...

R.P. relies on two cases to support his position—*Moreno v. State*, 900 S.W.2d 357 (Tex.App.—Texarkana 1995, no writ), and *In re S.J.*, 940 S.W.2d 332 (Tex.App.—San Antonio 1997, no writ). These cases support the proposition that a trial judge should not become so entangled in questioning as to become an advocate for the State, thereby precluding the trial judge from rendering an objective finding. *See S.J.*, 940 S.W.2d at 338; *Moreno*, 900 S.W.2d at 359–60. However, both cases also support the proposition that a trial judge may question a witness in order to clarify an issue the trial judge must decide in fulfilling his fact-finding role. *See S.J.*, 940 S.W.2d at 338; *Moreno*, 900 S.W.2d at 359.

In this case, the trial judge was the trier of fact at the disposition hearing. In that role, the trial court was required to determine whether the agreed disposition was suitable. The careful trial judge questioned R.P. to ensure that he understood the agreement and found it acceptable. The trial judge's question was merely for purposes of clarification and did not so entangle the trial judge that he became an advocate for the State. R.P.'s second point of error is overruled.

## DISPOSITION

■ In his third point of error, R.P. contends that the trial court abused its discretion in placing him on probation until his 18th birthday. R.P. asserts that the disposition was excessive for a first time misdemeanor offense and that there was no evidence to support the trial court's personal belief that R.P. had an "attitude."

■ A trial court has broad discretion in determining a suitable disposition for a juvenile who has been adjudged to have engaged in delinquent conduct, and we will not disturb the disposition on appeal absent a clear abuse of discretion. *In re H.G.*, 993 S.W.2d 211, 213 (Tex.App.—San Antonio 1999, no pet.). The trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to guiding rules and principles. *See id.*

Corey Schlep, the juvenile probation officer who handled R.P.'s case, testified that R.P. had previously been referred for disorderly conduct and was placed on deferred prosecution which he completed in July of 1999. Schlep also testified that she had limited information available when she initially prepared her pre-disposition report in which she recommended the agreed nine months probation. When she spoke with the family after R.P. was adjudicated delinquent in preparation for the disposition hearing, she obtained additional information. Schlep testified that in speaking with R.P.'s parents, she discovered that R.P. had a short temper and an attitude problem at home. In addition, R.P. had some minor misbehavior problems at school, including dress code violations, truancy, and disrespecting school personnel, until he was placed in alternative school. R.P. also had difficulty passing classes until he was placed in alternative school. Schlep testified that R.P. would be a good candidate for probation and that alternative school would work for him and enable him to obtain a diploma.

R.P's mother also testified that R.P. has a learning disability and was placed in a mental hospital for a short period of time when he was thirteen. R.P's mother stated that R.P. had a temper problem. In closing remarks, the State asserted that the prior agreement for nine months probation had been based on limited information; therefore, the State was deferring to the court to reach an appropriate disposition.

Given the testimony of Schlep and R.P.'s mother, the trial court did not abuse its discretion in placing R.P. on probation for twenty-three months. Both Schlep and R.P.'s mother testified that R.P. had an anger management problem, which R.P.'s counsel further admitted in her closing remarks. The trial court was permitted to assess R.P.'s demeanor, and Schlep's testimony supported the trial court's conclusion that R.P. had an "attitude." Although the trial court extended the period of probation period beyond the initial agreement, Schlep and the State both stated that the agreement was based on limited information, and the State withdrew its agreement. R.P.'s third point of error is overruled.

### CONDITIONS OF PROBATION

In his fourth point of error, R.P. contends that the trial court abused its discretion and deprived him of his constitutional rights by precluding him from earning a GED on probation. R.P.'s complaint centers on the following condition imposed by the court: "I will attend school every day and follow all school rules. I will notify my probation officer of any absences. (GED not acceptable)."

R.P. has waived his complaint by failing to object to the condition when it was imposed. *See* Tex.R.App. P. 33.1(a). In fact, R.P.'s counsel appeared to agree to this condition by stating in her closing remarks:

> I know you don't believe in a GED, but if there is some sort of agreement we can have and possibly keep him in Navarro [alternative school] or put him in the Adelante Academy, I think those environments would be very productive for him.

Finally, we note that the condition does not preclude R.P. from obtaining his GED. It merely states that a GED would not fulfill the condition that was imposed, i.e., attending school every day and following school rules. R.P.'s fourth point of error is overruled.

### CONCLUSION

The trial court's judgment is affirmed.